IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BLUE CROSS AND BLUE SHIELD OF KANSAS CITY, | ) ) ) | Case No. _____ |
| Plaintiff and Counterclaim Defendant, | ) ) ) ) | **GABRIEL M. SULLIVAN'S BRIEF IN SUPPORT OF MOTION TO QUASH NONPARTY SUBPOENA DUCES TECUM AND MOTION FOR PROTECTIVE ORDER** |
| vs. | ) ) | |
| GS LABS LLC, | ) ) | |
| Defendant and . Counterclaim Plaintiff. | ) ) ) | |

## I. INTRODUCTION

On July 20, 2021, Plaintiff, Blue Cross and Blue Shield of Kansas City ("Blue KC"), filed a lawsuit against Defendant, GS Labs LLC ("GS Labs"), in the U.S. District Court for the Western District of Missouri (hereafter, "Missouri Lawsuit"), arising from Blue KC's failure to pay GS Labs nearly $10 million for thousands of COVID-19 tests that GS Labs performed for over 12,000 of Blue KC's insureds at a handful of testing sites in Kansas, Missouri, and Nebraska.

In November 2021, Blue KC noticed a deposition of nonparty, Gabriel M. Sullivan ("Mr. Sullivan"), to occur in Omaha, Nebraska, on December 8, 2021. The deposition notice asks Mr. Sullivan to produce a litany of documents on topics that are facially overbroad, unduly burdensome, and bear no relevance to the Missouri Lawsuit. Blue KC also wants to examine Mr. Sullivan on these irrelevant, overbroad, and unduly burdensome subjects. In addition, Blue KC intends to depose Mr. Sullivan on a variety of confidential matters that are subject to a Protective Order that the Nebraska federal court has entered in a current lawsuit involving Mr. Sullivan, captioned as LMMC, LLC and LMMC Holdings, LLC v. Gabriel M. Sullivan et al. (Case No. 8:19-cv-00560) (hereafter, "Nebraska Lawsuit"). Further, despite several requests from Mr. Sullivan's counsel, Blue KC refuses to grant Mr. Sullivan's counsel a professional courtesy and reschedule Mr. Sullivan's deposition for December 22 or 23, 2021.

Page **1** of **15**

Mr. Sullivan's counsel has attempted in good faith to confer with Blue KC's counsel on several occasions over the last week to resolve the foregoing issues without court action. But, Blue KC refuses to appropriately narrow its questioning at Mr. Sullivan's deposition and insists that he responds to document requests that are overbroad, unduly burdensome, and irrelevant. Unfortunately, Blue KC has not confirmed that Mr. Sullivan's deposition on December 8, 2021, has been cancelled, despite Mr. Sullivan's counsel informing Blue KC's counsel that Mr. Sullivan would not be attending it

Although Mr. Sullivan has not been formally served with a subpoena to attend his deposition on December 8, 2021, Mr. Sullivan has filed the instant Motion to Quash and Motion for Protective Order pursuant to Fed. R. Civ. P. 26(c) and 45(d)(3) as a result of the outstanding disputes between Blue KC and Mr. Sullivan, as well as Blue KC's refusal to cancel Mr. Sullivan's deposition. Mr. Sullivan requests that the Court quashes his deposition and the document requests that Blue KC has attached to its deposition notice and enters a protective order that narrows the scope of Blue KC's examination of Mr. Sullivan, to exclude, among other things, questioning regarding the Nebraska Lawsuit involving Mr. Sullivan, questioning about GS Labs test sites outside of Kansas, Missouri, and Nebraska, and questioning about any of the document requests to which Mr. Sullivan has objected.

In support of this motion, Sullivan has filed the Declaration of Jordan W. Adam, which is attached to this document.

## II. **BACKGROUND**

On July 20, 2021, Plaintiff, Blue Cross and Blue Shield of Kansas City ("Blue KC"), filed a lawsuit against Defendant, GS Labs LLC ("GS Labs"), in the U.S. District Court for the Western District of Missouri (hereafter, "Missouri Lawsuit"). (Declaration of Jordan W. Adam, ¶ 4.) The Missouri Lawsuit arises from Blue KC's failure to pay GS Labs, a company that performs COVID-19 testing, nearly $10 million for thousands of COVID-19 tests that GS Labs performed in late 2020 and 2021 for over 12,000 of Blue KC's insureds at certain testing sites in Kansas, Missouri, and Nebraska. (Adam Declaration, ¶ 5.)

On October 26, 2021, Blue KC's attorney from St. Louis, Missouri, contacted Mr. Sullivan's counsel, Jordan Adam, for the first time and asked to depose Mr. Sullivan. (Id., at ¶ 8.) Mr. Sullivan lives in Nebraska and has worked at GS Labs since approximately the start of the COVID-19 pandemic in 2020. (Id., at ¶¶ 6, 8.) Mr. Sullivan is not a party to the Missouri Lawsuit. (Id., at ¶ 9.)

On October 27, 2021, Blue KC's attorney and Mr. Sullivan's attorney spoke on the phone regarding Mr. Sullivan's deposition. (Id., at ¶ 10.) Following that phone call, Blue KC's attorney provided dates during the first two weeks of November 2021 when he was available to depose Mr. Sullivan. (Id.) On November 1, 2021, Mr. Sullivan's attorney emailed Blue KC's attorney and informed him that the dates he proposed in November 2021 would not work and asked for dates in December 2021 that worked for his schedule. (Id., at ¶ 11.)

On November 4, 2021, Mr. Sullivan's attorney exchanged emails with Blue KC's attorney again and noted that Mr. Sullivan could be available for a deposition on December 8, 2021, in Omaha, Nebraska. (Id., at ¶ 12.) In those emails, Mr. Sullivan's attorney never told Blue KC's attorney that he would accept formal service of a subpoena *duces tecum* for Mr. Sullivan to appear at his deposition. (Id.) In fact, at no point -- either orally or in writing -- has Mr. Sullivan or his counsel ever agreed that Mr. Sullivan would waive proper and formal service of Blue KC's subpoena *duces tecum* for his deposition on December 8, 2021. (Id., at ¶ 14.) And, at no point has Mr. Sullivan's counsel ever agreed that he would accept proper and formal service of Blue KC's subpoena *duces tecum* on behalf of Mr. Sullivan. (Id.)

As part of their email communications on November 4, 2021, Blue KC's attorney emailed Mr. Sullivan's counsel a subpoena *duces tecum* for Mr. Sullivan's deposition. (Id., at ¶ 15.) The subpoena *duces tecum* requests the production of voluminous documents, as well as documents that are overbroad, unduly burdensome, irrelevant, and disproportionate to the needs of the Missouri Lawsuit. The subpoena requests the following:

1. All contracts, assignments, or other agreements between you and GS Labs LLC ("GSL"), 88 Medicine, LLC ("88 Med"), and any related companies.

2. All communications between you and any employee, owner, member, or officer of GSL, 88 Med, and any related companies related to:

   a. COVID-19 testing;
   b. Unsafe or unsanitary working or testing conditions;
   c. Forged consent forms;
   d. Unqualified employees taking biological samples from patients;
   e. Testing not being performed according to manufacturer's instructions;
   f. Inaccurate COVID-19 test results;
   g. Unreliable COVID-19 test results;
   h. Failure to return results;
   i. Improper methods of sample collection with respect to COVID-19 testing;
   j. Posting of a false or misleading cash price;
   k. Price gouging, disaster profiteering, excessive fees, improperly charging insured patients directly;
   l. Employee or management misconduct connected with GS Labs;
   m. Wrongful termination of nursing staff; and
   n. Misclassification of employees as independent contractor staff;

3. All sworn statements you have provided or have in your possession or control regarding:

    a. COVID-19 testing;

    b. Unsafe or unsanitary working or testing conditions;

    c. Forged consent forms;

    d. Unqualified employees taking biological samples from patients;

    e. Testing not being performed according to manufacturer's instructions;

    f. Inaccurate COVID-19 test results;

    g. Unreliable COVID-19 test results;

    h. Failure to return results;

    i. Improper methods of sample collection with respect to COVID-19 testing;

    j. Posting of a false or misleading cash price;

    k. Price gouging, disaster profiteering, excessive fees, improperly charging insured patients directly;

    l. Employee or management misconduct connected with GS Labs;

    m. Wrongful termination of nursing staff; and

    n. Misclassification of employees as independent contractor staff;

4. All communications between you and state or federal law enforcement agencies or officers relating to GSL, 88 Med, or COVID-19 testing.

5. All documents from government officials or entities ordering GSL or 88 Med to cease or limit any of its operations or threatening that GS Labs's operations may need to be limited or ceased and GS Labs's responses to the same.

(Id., at ¶ 15, and Exhibit A thereto.)

On November 18, 2021, Sullivan's counsel served a response objecting to Blue KC's subpoena *duces tecum*. (Id., at ¶ 16, and Exhibit B attached thereto.) The response raised objections that the deposition sought information that was not relevant

and otherwise beyond the scope of discovery under Rule 26(b), sought privileged and confidential information, and created an undue burden to Mr. Sullivan, among other objections. (Id.) These objections remain unresolved as of this filing. (Id., at ¶¶ 17, 26.)

On November 30, 2021, Mr. Sullivan's counsel emailed Blue KC's attorney and told him that Mr. Sullivan was standing on his objections to Blue KC's subpoena *duces tecum*. (Id., at ¶ 18.) Blue KC's attorney did not respond to this email. (Id.)

On Friday, December 3, 2021, Mr. Sullivan's counsel and Blue KC's counsel conducted a telephone conference regarding Mr. Sullivan's objections to the subpoena *duces tecum*. (Id., at ¶ 19.) During the conversation, Mr. Sullivan's counsel inquired whether Blue KC intended to limit the scope of the subpoena *duces tecum* and would agree not to inquire about matters that were unrelated to the disputes in the Missouri Lawsuit, such as testing performed at GS Labs sites outside of Kansas, Missouri, and Nebraska. Blue KC's counsel, however, would not agree to these limitations. (Id.)

In addition, during the phone call on December 3, Mr. Sullivan's counsel notified Blue KC's counsel that Mr. Sullivan's counsel had a scheduling conflict that would require a continuance of Mr. Sullivan's deposition. (Id., at ¶ 20.) Mr. Sullivan's counsel proposed rescheduling the deposition to December 22 or 23, 2021. Blue KC's counsel, however, refused to extend a professional courtesy to reschedule the deposition. (Id.)

On December 3, 2021, following Mr. Sullivan's phone call with Blue KC's counsel, Mr. Sullivan sent an email to Blue KC's counsel, confirming that Mr. Sullivan would not be appearing for a deposition on December 8, 2021. In the email, Mr. Sullivan's counsel wrote in part:

> As you know, the subpoena *duces tecum* for Mr. Sullivan is facially overbroad, unduly burdensome, disproportionate to the needs of the case, and irrelevant, among other things. As a result, and as I told you via email on Tuesday, November 30, 2021, we are standing on our objections to the subpoena *duces tecum*. Further, given that the deposition is scheduled to occur in a few days, our office would not have time to be attempting to respond to any modifications that you would agree to make to your subpoena *duces tecum* requests (assuming, of course, that those requests were reasonable, relevant, and not unduly burdensome or overbroad).
>
> Given the overbreadth, undue burden, and irrelevance of [Blue KC's] subpoena *duces tecum*, as well as your unwillingness to narrow its scope, it is evident that you intend to depose Mr. Sullivan on a variety of matters that have no relevance at all to the [Missouri] lawsuit and which would solely be meant to annoy, oppress, and unduly burden Mr. Sullivan.

> I do not want to get into a dispute with you about these discovery matters at Mr. Sullivan's deposition. That will not be an efficient or proper use of anyone's time. In addition, as I told you on the phone today, Mr. Sullivan will only be getting deposed once, so there is no point in proceeding with his deposition when there are clearly disputes between our clients that need to be resolved before Mr. Sullivan is deposed.

(Id., at ¶ 21.)

On December 6, 2021, Mr. Sullivan's counsel sent another email to Blue KC's counsel, reiterating that Mr. Sullivan's deposition could not proceed on December 8, 2021, due to the many unresolved disputes between Blue KC and Mr. Sullivan. (Id., at ¶ 22.) In that email, Mr. Sullivan's counsel also told Blue KC's counsel that he would object and would not agree to let Blue KC examine Mr. Sullivan on any of the following matters:

1. Any GS Labs test sites beyond those handful of GS Labs test sites in Kansas, Missouri, and Nebraska that performed testing on any Blue KC's insureds at issue in the Missouri Lawsuit;

2. Any matters, proceedings, or occurrences (*e.g.*, employment matters, testing procedures/policies, test results, practices, insurance claims, etc.) at any GS Labs test sites beyond those handful of GS Labs test sites in Kansas, Missouri, and Nebraska that performed testing on any Blue KC's insureds at issue in the Missouri Lawsuit;

3. Any matters concerning any of the allegations in any of the pleadings in the Nebraska federal court lawsuit involving LMMC and Mr. Sullivan (Case No. 8:19-cv-00560); and

4. Any of the categories of document to which Mr. Sullivan's counsel objected in the subpoena *duces tecum* that Blue KC previously prepared for Mr. Sullivan.

(Id., at ¶ 23.)

Mr. Sullivan's counsel informed Blue KC that its intent to depose Mr. Sullivan on matters relating to the current Nebraska federal lawsuit involving Mr. Sullivan, captioned as LMMC, LLC and LMMC Holdings, LLC v. Gabriel M. Sullivan et al. (Case No. 8:19-cv-00560) (hereafter, "Nebraska Lawsuit"), were irrelevant, overbroad, and unduly burdensome, and would only serve to harass, annoy, and oppress Mr. Sullivan. This is because (among other reasons) the Nebraska Lawsuit involves a business dispute between individuals who are not parties to the Missouri Lawsuit and which dispute

bears no relevance whatsoever to the Missouri Lawsuit. (Id., at ¶ 24.) Further, the Court has entered a Protective Order in the Nebraska Lawsuit, which bars Mr. Sullivan from providing testimony in the Missouri Lawsuit about confidential matters pertaining to the Nebraska Lawsuit. (Id., at ¶ 25.) Blue KC, however, refuses to refrain from examining Mr. Sullivan on matters relating to the Nebraska Lawsuit. (Id., at ¶ 26.)

Due to the emergence of the Omicron Variant, Mr. Sullivan's counsel also asked Blue KC on December 6, 2021, to confirm that any person who attends Mr. Sullivan's deposition must have a negative COVID-19 PCR test within 48 hours of the deposition. The attorneys for Blue KC and Mr. Sullivan, however, have not reached an agreement as to what COVID-19 protocols will be in place for Mr. Sullivan's deposition and how his deposition will be conducted remotely, should Blue KC choose not to attend his deposition in person. (Id., at ¶ 27.)

As of the date of this filing, Blue KC has not confirmed it is canceling Mr. Sullivan's deposition on December 8, 2021, nor has it agreed to narrow the scope of its subpoena *duces tecum*, as requested by Mr. Sullivan's counsel. Thus, Mr. Sullivan has filed a Motion to Quash Blue KC's subpoena *duces tecum* and has requested a Protective Order out of an abundance of caution. (Id., at ¶ 28.)

### III. JURISDICTION AND STANDARD OF REVIEW

Under FED. R. CIV. P. 37(a)(2) and 45(d)(3), the U.S. District Court for the District of Nebraska is the correct court to address Mr. Sullivan's Motion to Quash and Motion for Protective Order. This is because the location where Blue KC seeks to depose Mr. Sullivan is sought is in Nebraska, where Mr. Sullivan resides. See Fed. R. Civ. P. 26(c) ("[A]ny person from whom discovery is sought may move for a protective order […] on matters relating to a deposition in the court for the district where the deposition will be taken."; Fed. R. Civ. P. 37(a)(2) ("A motion for an order to a nonparty must be made in the court where the discovery is or will be taken."); Fed. R. Civ. P. 45(d)(3) (directing that motions to quash a subpoena must be made to "the court for the district where compliance is required").

Thus, the U.S. District Court for the Western District of Missouri does not have jurisdiction over Mr. Sullivan's motions, and such motions must be resolved in the District of Nebraska. SEC v. Behrens, No. 8:08-CV-13, 2013 U.S. Dist. LEXIS 114064,

at *7-8 (D. Neb. Aug. 13, 2013) ("The Court, in fact, lacks the authority to compel production by a nonparty outside this district."); see also, e.g., First Nat'l Bank v. Western Casualty & Surety Co., 598 F.2d 1203 (10th Cir. 1979) (recognizing District of Wyoming lacked jurisdiction over dispute on subpoena issued in District of Colorado for deposition that was to take place in Colorado); Cuthbertson v. Excel Indus., 179 F.R.D. 599 (D. Kan. 1998) (recognizing court obtains jurisdiction over nonparties during discovery process by issuance and service of subpoena upon deponent).

For good cause, the court may issue a protective order to protect a person "from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c). The rule recognizes the Court may specify terms relating to the "time and place" for the discovery ((c)(1)(B)), forbidding inquiry into certain matters ((c)(1)(D)), and requiring that confidential information not be revealed ((c)(1)(G)), among other options.

Similarly, Federal Rule 45(d)(3) recognizes the Court may quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies" ((d)(3)(A)(iii)) and that "subjects a person to undue burden" ((d)(3)(A)(iv)). See also Newkirk v. Conagra Foods, Inc., No. 8:10-cv-22-LSC-FG3, 2010 U.S. Dist. LEXIS 60835, at *10-11 (D. Neb. May 27, 2010).

In analyzing an objection to a subpoena to a nonparty, Nebraska has recognized the following standard for resolving such disputes:

> When a party issuing a subpoena makes a threshold showing that the discovery sought is relevant, a person or company resisting the subpoena bears the burden of showing that its objections are valid by providing specific explanations or factual support as to how the requested information is improper. However, even if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information.

Marquis Procap Sys. v. Novozymes N. Am., No. 8:20CV395, 2021 U.S. Dist. LEXIS 6803, at *10 (D. Neb. Jan. 13, 2021) (internal citations and quotation marks omitted).

## IV. ARGUMENT

Mr. Sullivan requests that the Court enter an order that quashes Blue KC's subpoena for his deposition on December 8, 2021, and a protective order that **(1)** continues his deposition to December 22 or 23, 2021, and **(2)** prohibits Blue KC from questioning Mr. Sullivan about **(a)** any GS Labs test sites beyond the Kansas, Missouri, and Nebraska test sites at issue in the Missouri Lawsuit, **(b)** any matters, proceedings, or occurrences (*e.g.*, employment matters, testing procedures/policies, test results, practices, and insurance claims) at any GS Labs test sites beyond the Kansas, Missouri, and Nebraska test sites at issue in the Missouri Lawsuit, **(c)** any matters concerning any of the allegations in any of the pleadings in the Nebraska federal court lawsuit involving Mr. Sullivan, captioned as LMMC, LLC and LMMC Holdings, LLC v. Gabriel M. Sullivan et al. (Case No. 8:19-cv-00560) (hereafter, "Nebraska Lawsuit"), and (d) any matters to which Mr. Sullivan has objected in the subpoena *duces tecum* that Blue KC prepared for Mr. Sullivan.

As an initial matter, Mr. Sullivan has not been properly served with a subpoena to attend his deposition on December 8, 2021, and accordingly is under no obligation to attend the deposition that Blue KC has noticed. FED. R. CIV. P. 45(b) ("Serving a subpoena requires delivering a copy ***to the named person***[.]") While the attorneys for Blue KC and Mr. Sullivan had discussions regarding service of a subpoena, those discussions never materialized into an agreement that Mr. Sullivan's counsel would waive formal service and accept Blue KC's subpoena on his client's behalf. **Only** to the extent the Court finds that Mr. Sullivan has been properly served with a subpoena pursuant to FED. R. CIV. P. 45(b) – which Mr. Sullivan expressly disputes – does any Court have jurisdiction over the proposed deposition that Blue KC has noticed for December 8, 2021.

If, however, the Court determines Mr. Sullivan has been properly served with Blue KC's subpoena, and thus has jurisdiction over this dispute, then the Court should still quash the subpoena and enter a protective order. First, Mr. Sullivan's counsel has informed Blue KC that they have unfortunately run into a conflict with the December 8, 2021, deposition date. As a result, Mr. Sullivan's counsel has asked Blue KC for an accommodation to reschedule the deposition to December 22 or 23, 2021, which would

be a mere two-week delay. Blue KC, however, has repeatedly refused to reschedule Mr. Sullivan's deposition. Blue KC cannot set forth any basis for why this professional courtesy cannot be extended, and Blue KC's counsel has given no indication that he cannot take the deposition on one of the proposed rescheduled dates. This short delay in taking Mr. Sullivan's deposition will prejudice no one. Accordingly, the Court should grant Mr. Sullivan's request to continue his deposition until December 22 or 23, which the Court has the authority to order under F ED. R. C IV. P. 26(c)(1)(B).

Second, Mr. Sullivan requests that the Court enter an order quashing and protecting Mr. Sullivan from responding to the document production section of Blue KC's deposition notice. As is plain on its face, much of the information sought for production relates to documents that ostensibly belong to GS Labs. Those materials can and should be requested from GS Labs, instead of imposing a substantial litigation burden on Mr. Sullivan to produce. Blue KC cannot demonstrate why the information demanded in the deposition notice rider must come from a nonparty (i.e., Mr. Sullivan) instead of from a party in the litigation. By imposing this responsibility on Mr. Sullivan, Blue KC has needlessly created an undue burden. Cf. Marquis Procap Sys. v. Novozymes N. Am., 2021 U.S. Dist. LEXIS 6803, at *20 (Jan. 13, 2021) ("'[S]erving a document subpoena on a nonparty to confirm what was already produced by a party is not reasonable to avoid undue burden or expense, or proportional to the needs of the case.'") (quoting ACI Worldwide Corp. v. Mastercard Techs., LLC, No. 8:14CV31, 2016 WL 3647850, at *5 (D. Neb. July 1, 2016)).

Third, the Court should quash Blue KC's subpoena *duces tecum* because it seeks the production of information that is facially overbroad, unduly burdensome, irrelevant, and disproportionate to the needs of the Missouri Lawsuit. For example, the subpoena requests the production of all communications whatsoever between Mr. Sullivan and any other employee of GS Labs regarding, among other things: (a) COVID-19 testing, (b) unsafe or unsanitary working or testing conditions, (c) testing not being performed according to manufacturer's instructions, (d) inaccurate or unreliable COVID-19 test results, (e) improper methods of collecting COVID-19 test samples, (f) fees for COVID-19 tests, (g) employee or management misconduct, and (h) allegedly wrongful termination of nursing staff, among many, many other overbroad and unduly

burdensome topics. (See Adam Declaration, Ex. B.) GS Labs has employed more than 4,000 employees since the fall of 2020. It has performed more than 1.3 million COVID-19 tests on hundreds of thousands of patients across more than 50 test sites all over the country. (Id., at ¶ 7.) Requesting Mr. Sullivan to collect and search through communications on these matters is patently overbroad and unduly burdensome.

Fourth, the Court should enter a Protective Order that prohibits Blue KC from examining Mr. Sullivan on the following matters:

1. Any GS Labs test sites beyond those handful of GS Labs test sites in Kansas, Missouri, and Nebraska that performed testing on any Blue KC's insureds at issue in the Missouri Lawsuit;

2. Any matters, proceedings, or occurrences (*e.g.*, employment matters, testing procedures/policies, test results, practices, insurance claims, etc.) at any GS Labs test sites beyond those handful of GS Labs test sites in Kansas, Missouri, and Nebraska that performed testing on any Blue KC's insureds at issue in the Missouri Lawsuit;

3. Any matters concerning any of the allegations in any of the pleadings in the Nebraska Lawsuit; and

4. Any of the categories of document to which Mr. Sullivan's counsel objected in the subpoena *duces tecum* that Blue KC previously prepared for Mr. Sullivan.

The Missouri Lawsuit involves a few GS Labs testing sites in Kansas, Missouri, and Nebraska. Based upon the categories of documents that Blue KC is asking Mr. Sullivan to produce when he is deposed, it is evident that Blue KC intends to depose Mr. Sullivan on numerous matters that are irrelevant, unduly burdensome, and overbroad. The Missouri Lawsuit involves a very narrow dispute between Blue KC and GS Labs: whether Blue KC should have to reimburse GS Labs for certain COVID-19 tests that GS Labs performed for some of Blue KC's insureds in late 2020 and in 2021 in Kansas, Missouri, and Nebraska.

How, for example, can a potential testing problem on one day at a GS Labs testing facility in Florida have anything to do with whether Blue KC has wrongfully withheld millions of dollars of payments from GS Labs? How could it be relevant to ask Mr. Sullivan about whether a patient in Arizona tested negative for COVID-19 when, in

fact, she later found out she may have been positive? How is alleged employee misconduct at a GS Labs facility in Oregon relevant to what happened at GS Labs' facilities in Kansas? The Court must impose some restraints on Blue KC's questioning of Mr. Sullivan at the outset lest Mr. Sullivan's deposition turns into a game of irrelevance and false gotchas.

A case in point is the Nebraska Lawsuit. It is no secret that Blue KC intends to depose Mr. Sullivan on that lawsuit, which involves Mr. Sullivan's former employment with LMMC, LLC. In that case, however, the Court has previously entered two protective orders (see Filing Nos. 50 and 105). Any issues related to Mr. Sullivan's work with LMMC are not relevant to the current dispute between the parties pending in the Western District of Missouri, and subjecting him to questioning on his employmen implicates the disclosure of confidential information subject to this Court's previously entered protective order. Cf. In re Subpoena to Witzel, 531 F.3d 113, 119 (1st Cir. 2008) (limiting discovery directed to a nonparty on matters that had "speculative and attenuated" connection to the underlying litigation).

Finally, due to the recent public health emergency involving the Omicron Variant, Mr. Sullivan has requested that individuals attending his deposition in person obtain a negative COVID-19 test result through PCR testing within 48 hours of his deposition. Blue KC has not confirmed they will agree to such a protocol. And, if Blue KC chooses to attend Mr. Sullivan's deposition via Zoom rather than in-person, then Blue KC and Mr. Sullivan will need to agree on how his deposition will be conducted remotely. Mr. Sullivan, therefore, requests a Protective Order requiring the parties to agree upon a COVID-19 protocol for Mr. Sullivan's deposition, as well as the protocol for how Mr. Sullivan's deposition will be conducted remotely.

## V. CONCLUSION

For the foregoing reasons, Mr. Sullivan respectfully requests that the Court enter an Order:

    1.    Quashing Blue KC's subpoena *duces tecum*, including the request that Mr. Sullivan be deposed on December 8, 2021;

2. Quashing and entering a protective order that allows Mr. Sullivan to refuse to respond to all of the document requests in Blue KC's subpoena *duces tecum* to which Mr. Sullivan has objected;

3. Rescheduling Mr. Sullivan's deposition for December 22 or 23, 2021, starting at 9 a.m., at the law offices of Fraser Stryker PC LLO, 500 Energy Plaza, 409 South 17th Street, Omaha, Nebraska, 68102;

4. Prohibiting Blue KC from examining Mr. Sullivan on any matter alleged in any of the pleadings in the Nebraska Lawsuit;

5. Prohibiting Blue KC from examining Mr. Sullivan about any GS Labs test sites beyond the Kansas, Missouri, and Nebraska test sites at issue in the Missouri Lawsuit;

6. Prohibiting Blue KC from examining Mr. Sullivan on any matters, proceedings, or occurrences (*e.g.*, employment matters, testing procedures/policies, test results, practices, insurance claims, and the like) at any GS Labs test sites beyond those handful of GS Labs test sites in Kansas, Missouri, and Nebraska at issue in the Missouri Lawsuit;

7. Establishing appropriate COVID-19 protocols to protect any person who appears in person for Mr. Sullivan's deposition, including, but not limited to, the obtaining of a negative PCR COVID-19 test within 48 hours of Mr. Sullivan's deposition;

8. Requiring Blue KC and Mr. Sullivan to meet-and-confer on a protocol for Blue KC conducting Mr. Sullivan's deposition remotely; and

9. Providing any further relief to Mr. Sullivan that the Court deems appropriate and equitable.

                    GABRIEL M. SULLIVAN, a non-party

By:   /s/ *Robert W. Futhey,* #24620
        Jordan W. Adam, #23723
        Robert W. Futhey, #24620
        FRASER STRYKER PC LLO
        500 Energy Plaza
        409 South 17th Street
        Omaha, NE 68102
        (402) 341-6000 (telephone)
        (402) 341-8290 (facsimile
        jadam@fraserstryker.com
        rfuthey@fraserstryker.com
        ATTORNEYS FOR MR. SULLIVAN

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing Gabriel M. Sullivan's Brief in Support of Motion to Quash Nonparty Subpoena Duces Tecum and Motion for Protective Order was served by electronic mail and regular U.S. Mail, postage prepaid, this 7th day of December, 2021, to:

| | |
|---|---|
| Aaron E. Schwartz<br>David C. Hollander<br>8182 Maryland Ave., 15th Floor<br>St. Louis, MO 63105<br>schwartz@capessokol.com<br>hollander@capessokol.com | Jeffrey B. Jensen<br>Tim Garrison<br>Matthew Diehr<br>Christina Moore<br>Husch Blackwell LLP<br>190 Carondelet Plaza, Ste. #600<br>St. Louis, MO 63105<br>jeff.jensen@huschblackwell.com<br>tim.garrison@huschblackwell.com<br>matthew.diehr@huschblackwell.com<br>christina.moore@huschblackwell.com |

                By:   /s/ *Robert W. Futhey,* #24620

2714618